**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SIGNIFY NORTH AMERICA CORPORATION and SIGNIFY HOLDING B.V.<br><br>Plaintiffs,<br><br>v.<br><br>ARTIKA FOR LIVING INC.<br><br>Defendant. | C.A. No. 26-cv-653<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Signify North America Corporation and Signify Holding B.V. (collectively, "Signify") for their Complaint against Artika For Living Inc. ("Artika"), allege as follows:

**NATURE OF THE ACTION**

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271, which gives rise to the remedies specified under 35 U.S.C. §§ 281 and 283-285.

**THE PARTIES**

2. Plaintiff Signify North America Corporation is a corporation organized and existing under the laws of Delaware with its principal place of business at 400 Crossing Blvd, Suite 600, Bridgewater, NJ 08807.

3. Plaintiff Signify Holding B.V. (formerly known as Philips Lighting Holding B.V.) is a corporation organized and existing under the laws of the Netherlands with its registered office at High Tech Campus 48, 5656 AE Eindhoven, The Netherlands.

4. On information and belief, Artika is a corporation organized and existing under the laws of Canada with its principal place of business at 800, Boulevard Hymus, Saint-Laurent, Quebec, H4S 0B5.

**JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338 and because this action arises under the patent laws of the United States, 35 U.S.C. § 271, *et seq*.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Artika is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

7. Upon information and belief, Artika is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least in part to its substantial business in this State and judicial district including: (A) at least part of its infringing activities alleged herein or those committed vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers alleged herein which purposefully avail Artika of the privilege of conducting those activities in this state and this District and, thus, submits itself to the jurisdiction of this Court; (B) regularly doing business or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents and residents of this District vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers, and (C) offering for sale, selling, and importing infringing goods into the stream of commerce and into the United States with the knowledge and expectation that such products are, will be, and continue to be sold, offered for sale, and/or imported into Texas and this District.

8. Artika also has an authorized agent, Bell & McCoy, at 4630 Nall Road, Farmers Branch, TX 75244, through which Artika sells, offers for sale, and distributes its products, including the Accused Products to customers throughout the state of Texas and including this District:




*See* https://www.bellandmccoy.com/territory-map (identifying the "East Texas" region); https://pro.artika.com/pages/sales-agents-reps (identifying Bell & McCoy as an authorized distributor for Artika). Bell & McCoy has employees at places of business within this District that constitute authorized agents of Artika for performing infringing activities in this District, including use, sales, and offers for sale of the Accused Products. *See, e.g.*, https://www.linkedin.com/in/brandon-delaney-11983512/ (a LinkedIn profile that identifies a Bell & McCoy Sales Specialist located in Chandler, Texas and purporting to have responsibility over Bell & McCoy's East Texas region).

9. Artika also offers for sale, sells, and ships products, including the Accused Products, directly to consumers and imports those products into the United States, including to

customers within this District. For example, Artika offers its products for sale with "Flat Rate $11 Shipping Across USA" in as little as three business days:

FAST SHIPPING - Flat Rate $11 Shipping Across USA

. . .

# SHIPPING TO UNITED STATES

# 3 to 9 business days

We ship most packages with **UPS Ground** to the **48 contiguous United States**.

- **Flat-rate shipping fee: $11**
- **Exclusions:** Alaska, Hawaii, Puerto Rico

**Important (Orders over $800 USD):**
All orders over **$800.00 USD** shipped to the United States must be accompanied by the consignee's **tax number**, which is required to complete the carrier's customs documents. If we cannot obtain the required information, the order will be cancelled.

https://artika.com/policies/shipping-policy.

10. Artika offers products, including the Accused Products, for sale directly to customers within this District both through its website at https://artika.com, through its Facebook shop at https://www.facebook.com/ArtikaOfficial/shop, and through its network of distributors and/or authorized agents. For example, the website https://artika.com allows a customer to place an order for delivery to locations within this District:




11. Further, Artika's Facebook page and shop runs Meta Ads for products, including Accused Products, that are geographically targeted to offer sales of those products to customers throughout the United States, including to customers within this District.

12. On information and belief, Artika has actually sold products, including the Accused Products, both directly and indirectly to customers within this District both through its website, through its Facebook shop, and through its network of distributors and/or authorized agents.

13. Artika has also submitted documents, including user manuals, to the Federal Communications Commission requesting authorization for hundreds of products to be sold and used within the United States, including many Accused Products. *See* https://fccid.io/company/ARTIKA-FOR-LIVING-INC (listing 599 FCC IDs).

14. Artika has also registered trademarks, including the word mark ARTIKA (Reg. No. 6269168), with the United States Patent and Trademark Office indicating prior commercial use and future planned commercial use of the mark within the United States for products that include,

inter alia, "Lighting fixtures; Electric lighting fixtures; LED lighting fixtures; LED solar lighting fixtures; LED lighting fixtures in the nature of light bars; Flexible LED light strip for decorative purposes; Exterior and interior light fixtures; [and] light bulbs."

15. Artika's presence and activities are specifically designed to further the importation, distribution, offer for sale, sale, and use of Artika's infringing products in Texas and in this District. Artika has thus committed acts of direct and/or indirect patent infringement within Texas and this District, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas and this District such that personal jurisdiction over Artika would not offend traditional notions of fair play and substantial justice.

16. Artika has placed and continues to place infringing products into the U.S. stream of commerce. Artika has placed such products into the stream of commerce with the knowledge and expectation that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial district and the State of Texas.

17. Artika utilizes established distribution channels (including at least retailers such as The Home Depot, Lowes, and Costco and distributors such as Bell & McCoy) to distribute, market, sell, offer for sale, and service infringing products directly to customers and end users throughout Texas and within this district. Such products include, but are not limited to: the Maelstrom Pendant, Coda Pendant, Alton Flush Mount, Essence Flare, Essence Bar Pendant, and Altitude Flush Mount.

18. On information and belief, Artika purposefully places infringing Artika's products in established distribution channels in the stream of commerce by contracting with national retailers who sell Artika's products in the United States, including in Texas and this District. Artika, directly or through its subsidiaries and affiliates, contracts with these companies with the

knowledge and expectation that Artika's products will be imported, distributed, advertised, offered for sale, and sold in the U.S. market.

19. For example, Artika distributes its products to residents of Texas through national retailers including The Home Depot, Lowes, and Costco, which have retail locations located within this District. For example, dozens of Artika products, including the Accused Products, are available and in stock at Home Depot located at 411 E Loop 281, Longview, TX 75605. *See* Ex. 1 (showing the Artika Alton Flush Mount "In stock."). Artika products can also be ordered and picked up from the Lowes in Marshall, Texas. *See* Ex. 2 (showing Artika products as available for pickup in Marshall, Tx on August 5th). Artika products are also available and in-stock at Costco located at 3800 N Central Expressway, Plano, Tx 75074. *See* Ex. 3.

20. Based on Artika's connections, relationships, supply contracts, other agreements, U.S.-based national retailers, distributors, and digital distribution platforms, Artika knows that Texas, including this District, is a termination point of the established distribution channel, namely online and brick and mortar stores offering Artika's products to consumers in Texas and this district. Artika also sells and ships products directly to consumers in this district via its website (*see* https://artika.com/policies/shipping-policy). Artika, therefore, has purposefully directed its activities at Texas and this District, and should reasonably anticipate being brought in this Court, at least on this basis.

21. This Court has personal jurisdiction over Artika, directly or through intermediaries, distributors, importers, customers, subsidiaries, and/or consumers, because Artika has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that

personal jurisdiction over Artika would not offend traditional notions of fair play and substantial justice.

22. In the alternative, if Artika maintains that it is not subject to personal jurisdiction of the courts of general jurisdiction of any state, the Court has personal jurisdiction over Artika under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law and exercising jurisdiction over Artika is consistent with the U.S. Constitution.

## SIGNIFY AND THE ASSERTED PATENTS

23. Signify (previously known as Philips Lighting) is a global market leader in solid state and connected lighting with unparalleled expertise in the development, manufacturing, and application of innovative LED lighting solutions.

24. Signify is known the world over for being at the forefront of lighting innovation. Signify and its inventors have won many awards for their lighting work, including the famed L-Prize and the IPO inventor of the year. Signify has used its cutting-edge technology to bring world class LED light installations at iconic American landmarks, such as the Empire State building and the San Francisco Bay Bridge.

25. To protect its intellectual property resulting from its significant investments in research and development, Signify has sought and been awarded numerous patents directed to various LED inventions and technologies and maintains a portfolio of over 4,000 patents. Among others, Signify's LED-related patents include U.S. Patent Nos. 11,408,588; 12,435,860; 11,002,424; 7,737,643; 8,629,631; and 8,596,837 (collectively, the "Asserted Patents").

26. U.S. Patent No. 11,408,588 (the "'588 Patent"), titled "Configurable Lighting System," was duly and legally issued by the United States Patent and Trademark Office on August 9, 2022. The '588 Patent generally relates to a luminaire for providing illumination of a selected

color temperature, lumen output, or photometric distribution. *See* '588 Patent at Abst. As explained in the '588 Patent, "[t]he luminaire can comprise at least two light sources that have different illumination characteristics, for example different color temperatures, different lumen outputs, or different photometric distributions. The system can configure the luminaire to operate a first of the two light sources, a second of the two light sources, or both of the light sources based on an input." *Id*. Plaintiff Signify Holding B.V., formerly known as Philips Lighting Holding B.V., is the assignee and owner of all right, title, and interest in the '588 Patent, a copy of which is attached as Exhibit 4.

27. U.S. Patent No. 12,435,860 (the "'860 Patent"), titled "Configurable Lighting System," was duly and legally issued by the United States Patent and Trademark Office on October 23, 2025. The '860 Patent generally relates to a luminaire for providing illumination of a select color temperature, lumen output, or photometric distribution. *See* '860 Patent at Abst. As explained in the '860 Patent, "a luminaire can comprise multiple groups of light emitting diodes of different color temperatures. . . . In some example embodiments, the power supply can further vary the relative intensities of the light emitting diodes to manipulate the color temperature of the luminaire within a range." *Id.* at 3:56-59. Plaintiff Signify Holding B.V., formerly known as Philips Lighting Holding B.V., is the assignee and owner of all right, title, and interest in the '860 Patent, a copy of which is attached as Exhibit 5.

28. U.S. Patent No. 11,002,424 (the "'424 Patent"), titled "Configurable Lighting System," was duly and legally issued by the United States Patent and Trademark Office on May 11, 2021. The '424 Patent generally relates to a luminaire for providing illumination of a select color temperature, lumen output, or photometric distribution. *See* '424 Patent at Abst. As explained by the '424 Patent, "a luminaire can comprise: a housing; a substrate disposed in the

housing; a first plurality of light emitting diodes that are mounted to the substrate and that have a first color temperature; a second plurality of light emitting diodes that are mounted to the substrate and that have a second color temperature; and a plurality of manual switches that are disposed at the housing." *Id.* at 8:5-11. Plaintiff Signify Holding B.V., formerly known as Philips Lighting Holding B.V., is the assignee and owner of all right, title, and interest in the '424 Patent, a copy of which is attached as Exhibit 6.

29. U.S. Patent No. 7,737,643 (the "'643 Patent"), titled "LED Power Control Methods and Apparatus," was duly and legally issued by the United States Patent and Trademark Office on June 15, 2010. The '643 Patent generally relates to controlling power delivered to a load and is directed to new and improved methods and apparatus for providing and controlling power to at least some types of loads, not previously known in the art. Plaintiff Signify North America Corporation is the assignee and owner of all right, title, and interest in the '643 Patent, a copy of which is attached as Exhibit 7.

30. U.S. Patent No. 8,629,631 (the "'631 Patent"), titled "Method and System for Improving Start-Up Time of a Light Emitting Diode (LED) Driver at Reduced Input Voltage," was duly and legally issued by the United States Patent and Trademark Office on January 14, 2014. The '631 Patent relates to "[i]mproving start-up time of a light emitting diode (led) driver at lower input voltage is accomplished with a quick start circuit comprising a constant current source that replaces the traditional trickle charge start-up path for charging of a Vcc capacitor supplying operating voltage to an SMPS controller." '631 Patent at Abs. Plaintiff Signify Holding B.V., formerly known as Philips Lighting Holding B.V., is the assignee and owner of all right, title, and interest in the '631 Patent, a copy of which is attached as Exhibit 8.

31. U.S. Patent No. 8,596,837 (the "'837 Patent"), titled "Systems, methods, and devices providing a quick-release mechanism for a modular LED light engine," was duly and legally issued by the United States Patent and Trademark Office on December 3, 2013. The '837 Patent relates to an "LED module [that] can include an outer housing having [] multiple elongated slots that . . . can extend through the outer housing and provide a passageway through the LED modules." '837 Patent at 2:5-9. "Each of the elongated slots can also be configured to receive a portion of a screw through the slot." *Id.* at 2:9-10. Plaintiff Signify Holding B.V., formerly known as Philips Lighting Holding B.V., is the assignee and owner of all right, title, and interest in the '837 Patent, a copy of which is attached as Exhibit 9.

**ARTIKA AND ITS INFRINGING PRODUCTS**

32. Artika is in the business of manufacturing, offering for sale, selling, and distributing lighting products, including lighting products based on LED technology.

33. On information and belief, Artika directly and/or indirectly offers its infringing products online and in brick and mortar locations, to sell and distribute products throughout the United States, including this District.

34. On information and belief, Artika makes, uses, offers to sell, sells, and/or imports the accused products in the United States.

35. On information and belief, Artika makes, uses, offers to sell, sells, and/or imports the Maelstrom LED pendant light, model number PDT-MACBL, (the "Maelstrom Pendant"), in the United States, infringing at least the '588 Patent. The Maelstrom Pendant is mapped to the claims of the '588 Patent later in this Complaint. An image of the Maelstrom Pendant is provided below.



https://artika.com/products/maelstrom.

36. On information and belief, Artika makes, uses, offers to sell, sells, and/or imports the Coda modern LED pendant light 5CCT (the "Coda Pendant"), model number PDT-CDA5C-C2BL, in the United States, infringing at least the '860 Patent. The Coda Pendant is mapped to the claims of the '860 Patent later in this Complaint. An image of the Coda Pendant is provided below.



https://artika.com/products/coda.

37. On information and belief, Artika makes, uses, offers to sell, sells, and/or imports the Alton Modern LED Flush Mount Ceiling Light 3CCT, model number FM-ALC-HD2WD (the "Alton Flush Mount"), in the United States, infringing at least the '424 Patent. The Alton Flush Mount is mapped to the claims of the '424 Patent later in this Complaint. An image of the Alton Flush Mount is provided below.



https://artika.com/products/alton-1?variant=46315659755732.

38. On information and belief, Artika makes, uses, offers to sell, sells, and/or imports the Essence Flare 3-Light Integrated LED Semi-Flush Mount, model number CL36W-HD1, (the "Essence Flare"), in the United States, infringing at least the '643 Patent. The Essence Flare is mapped to the claims of the '643 Patent later in this Complaint. An image of the Essence Flare is provided below.



https://web.archive.org/web/20210119045553/https://www.artika.com/en/products/indoor-lights/flush-mount-lights?p=1.

39. On information and belief, Artika makes, uses, offers to sell, sells, and/or imports the Essence Bar LED pendant light, model number PDT-EB, (the "Essence Bar Pendant"), in the United States, infringing at least the '631 Patent. The Essence Bar Pendant is mapped to the claims of the '631 Patent later in this Complaint. An image of the Essence Bar Pendant is provided below.



https://artika.com/products/essence-bar.

40. On information and belief, Artika makes, uses, offers to sell, sells, and/or imports the Altitude Modern LED Flush Mount Ceiling Light 5 CCT ("Altitude Flush Mount"), model number FM-AD5C-CR, in the United States, infringing at least the '837 Patent. The Altitude Flush Mount is mapped to the claims of the '837 Patent later in this Complaint. An image of the Altitude Flush Mount is provided below.



https://artika.com/products/altitude.

**ARTIKA'S KNOWLEDGE OF ITS INFRINGEMENT**

41. Artika is aware of Signify's patent portfolio, including the Asserted Patents. Artika is further aware that its activities (including selling, offering for sale, and importing the Accused Products) constitute patent infringement of the Asserted Patents.

42. For example, on January 21, 2021, Signify first notified Artika in writing that certain of Artika's LED products used Signify's patented technology.

43. Signify's January 21, 2021 letter specifically noted that several of Artika's products, including the Essence Flare Track Lights, Essence Bar Pendants, Ratio Vanity Fixture, and Hologram Pendants used the '643 Patent. Thus, Artika was on notice of its infringement of

the ’643 Patent since at least January 21, 2021 and, despite such notice, continued to willfully infringe the same.

44. Later that year, on November 16, 2021, representatives from Signify gave a presentation to Artika that provided, among other things, an overview of Signify’s EnabLED Licensing Program and the benefits of joining the EnabLED program. Signify’s presentation also identified 19 Signify patents that were being used by Artika without Signify’s permission, and included a detailed explanation of how Artika infringed.

45. The November 16, 2021 presentation included a detailed discussion of the ’643 Patent and explained, over multiple slides, how Artika’s products used the ’643 Patent.

46. The November 16, 2021 presentation also identified the ’631 Patent and included a detailed, limitation-by-limitation analysis explaining how Artika’s Essence Bar Pendant infringed the ’631 Patent. Thus, Artika was on notice of its infringement of the ’631 Patent since at least November 16, 2021 and, despite such notice, continued to willfully infringe the same.

47. On December 23, 2021, Signify provided Artika additional materials identifying exemplary foreign patents corresponding to the US patents Signify had previously identified. Included in the materials exchanged on December 23, 2021 were the ’643 and ’631 Patents, further reinforcing Signify’s notice to Artika of Artika’s infringement and further underscoring Artika’s knowledge of the same.

48. On March 11, 2022, Artika and Signify participated in a call regarding Signify’s assertions, during which Artika refused to license the ’643 Patent and, instead, challenged Signify’s infringement theory. Signify responded via email on April 6, 2022 and explained why Artika’s noninfringement theory lacked merit and emphasized that even if Artika’s theory on the

’643 Patent was correct, that did not resolve Artika’s infringement of the numerous other patents identified by Signify.

49. On July 28, 2022, Signify sent Artika an additional patent notice and advised Artika that Signify’s investigation into Artika’s infringement was ongoing. In particular, Signify identified additional products, including Artika’s Salto flush mount products, Horizon flush mount products, Subway vanity light products, and Skylight flat panel products as using the ’643 patent, among many others.

50. In September 2022, Artika provided Signify with a presentation that acknowledged Signify had asserted twenty-five patents against Artika, including the ’643 Patent and the ’631 patent. Artika did not accept Signify’s offer to license Signify’s patents.

51. From October 2022 through October 2023, the parties exchanged additional correspondence and presentations regarding Signify’s portfolio, but Artika continued to use Signify’s patented technology without permission despite knowledge that its activities constitute infringement of Signify’s patents.

52. On October 5, 2023, Signify again attempted to resolve Artika’s infringement and provided a presentation to Artika with a license offer. Signify’s October 5, 2023 presentation specifically identified the ’643 and ’631 patents, among many others, as being infringed by Artika. Once again, Artika refused to take a license to Signify’s patents.

53. On October 5, 2023, representatives from Signify met with executives from Artika in Montreal, Canada in an effort to resolve Artika’s ongoing infringement. During that in-person meeting, Signify reiterated that Artika was infringing numerous Signify patents, including the ’643 and ’631 Patents, and provided Artika with a license offer. Artika, however, declined Signify’s

proposal and continued its infringing conduct without licensing Signify's patents despite knowledge that its activities constitute infringement of Signify's patents.

54. On May 21, 2024, Signify sent Artika another letter identifying additional Artika products that utilized both previously and newly identified Signify patents without permission. Signify's May 21, 2024 letter noted that Artika's Maelstrom and Malibu pendants utilize the '588 Patent. Even after Signify identified more infringing products and patents, Artika still refused to take a license. Thus, Artika was on notice of its infringement of the '588 Patent since at least May 21, 2024 and, despite such notice, continued to willfully infringe the same.

55. On December 2, 2024, Signify again wrote to Artika identifying additional Artika products that utilized Signify's patents without permission. Specifically, the December 2, 2024 letter identified Artika's Meridian pendant as using the '643, '631, and '588 Patents, and also identified Artika's Tivoli Vanity light as using the '643 Patent. The December 2, 2024 letter further identified Artika's Sunray flat panel, Altitude flush mount, Preston vanity, Rialto vanity, DNA wall light, Delray flush mount, Orly ceiling light, Wilton vanity, and Radius flush mount as utilizing the '588 Patent. The December 2, 2024 letter further identified the '424 Patent as being utilized by Artika's Alton flush mount, Vivaldi pendant, and Delray flush mount products. Despite Signify's identification of additional Artika products and Signify patents that were used by Artika without permission, Artika still did not take a license to Signify's patents. Thus, Artika was on notice of its infringement of the '424 Patent since at least December 2, 2024 and, despite such notice, continued to willfully infringe the same.

56. On February 17, 2025 Signify sent Artika yet another additional patent notice letter, identifying Artika's DNA wall sconce as using the '643, '631, and '424 Patents; Artika's Sunray flat panels as using the '643 and '631 Patents; Artika's Orly flush mounts as using the '643 and

’424 Patents; and Artika’s Altitude flush mount products as using the ’424 Patent. Despite Signify’s identification of additional Artika products that used Signify’s patents without permission, Artika still did not take a license to Signify’s patents.

57. On February 2, 2026, Signify again wrote to Artika identifying additional Artika products that utilized Signify’s patents without permission. Specifically, the February 2, 2026 letter noted that various of Artika’s 3CCT products, including the Europa disk, infringed the ’424 and ’588 Patents and that Artika’s 5CCT products, including the Coda Pendant, infringed the ’588 and ’860 Patents. Despite Signify’s identification of additional Artika products that used Signify’s patents and Signify’s identification of additional patents that were used by Artika without permission, Artika still did not take a license to Signify’s patents. Thus, Artika was on notice of its infringement of the ’860 Patent since at least February 2, 2026 and, despite such notice, continued to willfully infringe the same.

58. On July 30, 2026, Signify again wrote to Artika identifying additional Artika products that utilized Signify’s patents without permission. Specifically, the July 30, 2026 letter noted that various Artika products, including the Altitude Flush Mount infringed the ’837 Patent. Despite Signify’s identification of additional Artika products that used Signify’s patents and Signify’s identification of additional patents that were used by Artika without permission, Artika still did not take a license to Signify’s patents. Thus, Artika was on notice of its infringement of the ’837 Patent since at least July 30, 2026 and, despite such notice, continued to willfully infringe the same.

59. At least as early as the date of the filing of this Complaint, Artika has received notice of its infringement and has continued to engage in the activities alleged to infringe each of the Asserted Patents.

60. Even after years of notice and repeated attempts to resolve Artika's infringement through licensing discussions, Artika has refused to license Signify's patents. Artika has refused a license despite not only being put on notice of its infringement, including many of the Asserted Patents in this case.

## GENERAL ALLEGATIONS

61. Artika has directly and indirectly infringed and continues to directly and indirectly infringe each of the Asserted Patents by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), and/or (c), including but not necessarily limited to one or more of making, using, selling, offering to sell, and importing into the United States, and inducing and contributing to infringement by others, in this District and elsewhere in the United States, the products identified below.

62. Artika's acts of infringement have caused and continue to cause damage to Signify. As a result of Artika's wrongful acts, Signify is entitled to recover damages from Artika in an amount to be awarded at trial.

63. Artika's infringement of the Asserted Patents has been and continues to be willful. Artika has been aware of its infringement of Signify's patents since it received notice of infringement, but has continued to commit infringing acts despite being forewarned of its infringement.

64. Artika has committed and continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Artika knew or should have known that its actions constituted an unjustifiably high risk of infringement.

65. Artika's infringement of the Asserted Patents is causing irreparable harm for which Signify has no adequate remedy at law unless Artika is enjoined by this Court. Under 35 U.S.C.

§ 283, Signify is entitled to a permanent injunction against further infringement of the Asserted Patents.

66. In the interest of providing detailed averments of infringement, Signify has identified below at least one claim per patent to demonstrate infringement. However, the selection of claims should not be considered limiting, and additional claims of the Asserted Patents that are infringed by Artika will be disclosed in compliance with any applicable local rules and standing orders.

## COUNT ONE
## (Infringement of U.S. Patent No. 11,408,588)

67. Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

68. On information and belief, Artika has directly infringed and is directly infringing claims of the ’588 Patent, including at least claim 21, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, the Maelstrom Pendant mapped below, products substantially similar to the Maelstrom Pendant, and/or other products with substantially similar features (collectively, the "’588 Accused Products").

69. Signify names this exemplary infringing instrumentality to serve as notice of Artika’s infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the ’588 Accused Products, including (but not limited to) products that it has previously identified to Artika as infringing products.

70. Claim 21 of the ’588 Patent recites:

21. A lighting device comprising:

a first set of LED light sources each having a first color temperature and a second set of LED light sources each having a second color temperature;

at least one switch;

wherein at least one of the first set of LED light sources and the second set of LED light sources is controlled by the at least one switch;

wherein the at least one switch includes a first configuration associated with a third color temperature different from the first and second color temperatures and in between the first and second color temperatures, wherein the third color temperature is produced by mixing light emitted by at least a portion of the first set of LED light sources and light emitted by at least a portion of the second set of LED light sources.

71. The Maelstrom Pendant is a lighting device. For example, this limitation is shown below.




72. The Maelstrom Pendant comprises a first set of LED light sources each having a first color temperature and a second set of LED light sources each having a second color

temperature. For example, as shown below, the lighting device comprises a first set of LEDs having a first color temperature and second set of LEDs having a second color temperature within its housing.







73. The Maelstrom Pendant comprises at least one switch. One switch is shown below.




74. In the Maelstrom Pendant, at least one of the first set of LED light sources and the second set of LED light sources is controlled by the at least one switch. For example, on information and belief, when the switch is set to the 2700K position, the first set of LEDs illuminate and when the switch is set to the 4500K position, the second set of LEDs illuminate. The switch controlling the first set of LED light sources and second set of LED light sources is identified below:



75. In the Maelstrom Pendant, the at least one switch includes a first configuration associated with a third color temperature different from the first and second color temperatures and in between the first and second color temperatures. For example, the switch includes a first configuration that is associated with 3500K, which is different from the first color temperature (2700K) and second color temperatures (4500K) and in between the first and second color temperatures:




76. In the Maelstrom Pendant, the third color temperature is produced by mixing light emitted by at least a portion of the first set of LED light sources and light emitted by at least a portion of the second set of LED light sources. For example, as shown below, the switch has positions associated with different color temperatures. On information and belief, one color temperature (3500K) is between the first color temperature (2700K) and second color temperature (4500K) and produced by mixing light emitted by at least a portion of the first and second sets of LED light sources:


Constant Current LED Driver&Triac dimmer
Commande DEL graduable à courant constant
Graduateur/Dimmer:Triac
Class 2
Modèle/P/N:BQE25V-0600-41-TD-S2
Tension d'entrée/Vin:100-135VAC 50/60Hz
Puissance d'entrée maximale/Pin:33Watts Max
Courant d'entrée/Iin:0.4A Max
Tension de sortie/Vout:30-41VDC
Courant de sortie/Iout:600mA C.C.
Puissance maximale de sortie/Max Pout:24.6W
Facteur de Puissance/P F:>0.90 ta:50℃
2227 Fabriqué en Chine/Made in China BECKY
E478128
4500K
3500K
2700K
Second Color Temperature
Third Color Temperature
First Color Temperature


First Color Temperature
Second Color Temperature


First Color Temperature
Second Color Temperature
2700K
3500K
4500K
WARM WHITE
BLANC CHAUD
BLANCO CÁLIDO
COOL WHITE
BLANC FROID
BLANCO FRÍO
TUNABLE WHITE / BLANC AJUSTABLE / BLANCO AJUSTABLE
Third Color Temperature

77. The full extent of Artika's infringement is not presently known to Signify. On information and belief, Artika has made and sold, or will make and sell, products under different names or part numbers that infringe the '588 Patent in a similar manner.

78. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '588 Patent that is infringed and each product that Signify is aware of that infringes the '588 Patent in accordance with the applicable scheduling order in this case.

79. On information and belief, Artika has been aware of and has had notice of the '588 Patent and its infringement of the '588 Patent since at least May 21, 2024, when Signify notified Artika that its Maelstrom Pendant, among other products, practiced the '588 Patent, among many other Signify patents.

80. On information and belief, by continuing to make, use, sell, offer to sell and/or import the '588 Accused Products on or after Artika first had notice of Signify's allegations of infringement, Artika indirectly infringed and continues to indirectly infringe at least claim 21 of the '588 Patent by active inducement under 35 U.S.C. § 271(b). Artika has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the '588 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Artika has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by Artika's direct and indirect customers, including the making, using, selling,

offering for sale and/or importation of the ’588 Accused Products in the United States. Artika has performed and continues to perform these affirmative acts with knowledge of the ’588 Patent and with knowledge and intent that such actions would induce infringement of the ’588 Patent by Artika’s direct and indirect customers.

81. On information and belief, by continuing to make, use, sell, offer to sell and/or import the ’588 Accused Products on or after Artika first had notice of Signify’s allegations of infringement, Artika indirectly infringed and continues to indirectly infringe at least claim 21 of the ’588 Patent by contributorily infringing under 35 U.S.C. § 271(c). Artika’s affirmative acts of manufacturing, selling, offering for sale, and/or importing the ’588 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to Artika’s customers and end-users directly infringing the ’588 Patent. The ’588 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Artika to be especially made or especially adapted for use in infringement of the ’588 Patent.

82. On information and belief, Artika has performed and continues to perform the above-identified acts of infringement with knowledge of the ’588 Patent and with intent, or willful blindness, that they cause the direct or indirect infringement of the ’588 Patent. Accordingly, Artika’s continued infringement of the ’588 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

83. On information and belief, Signify has suffered and continues to suffer damages as a result of Artika’s infringement of the ’588 Patent in an amount to be determined at trial, but no less than a reasonable royalty.

84. On information and belief, Artika's infringement of the '588 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless Artika is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the '588 Patent.

85. On information and belief, and in light of the allegations above, including Artika's willful infringement of the '588 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

**COUNT TWO**
**(Infringement of U.S. Patent No. 12,435,860)**

86. Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

87. On information and belief, Artika has directly infringed and is directly infringing claims of the '860 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, the Coda Pendant mapped below, products substantially similar to the Coda Pendant, and/or other products with substantially similar features (collectively, the "'860 Accused Products").

88. Signify names this exemplary infringing instrumentality to serve as notice of Artika's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '860 Accused Products, including (but not limited to) products that it has previously identified to Artika as infringing products.

89. Claim 1 of the ’860 Patent recites:

> 1. A luminaire comprising:
>
> a first set of light emitting diode (LED) light sources each having a first color temperature and a second set of LED light sources each having a second color temperature are both disposed in a cavity of the luminaire, wherein a third color temperature is produced from mixing the light emitted by at least a portion of the first set of LED light sources and at least a portion of the second set of LED light sources;
>
> at least one switch disposed on the luminaire, wherein the first set of LED light sources and second set of LED light sources are controlled by at least one switch;
>
> wherein when the at least one switch is in a first configuration, the light emitted by the luminaire is the third color temperature at a third lumen intensity, wherein the third lumen intensity is a combination of a first lumen intensity of at least a portion of the first set of LED light sources and a second lumen intensity of at least a portion of the second set of LED light sources; and
>
> wherein the third color temperature is based, at least in part, on the first lumen intensity being more than the second lumen intensity.

90. The Coda Pendant is a luminaire. For example, this limitation is shown below.



91. The Coda Pendant comprises a first set of light emitting diode (LED) light sources each having a first color temperature and a second set of LED light sources each having a second

color temperature are both disposed in a cavity of the luminaire. For example, this limitation is shown below:







92. On information and belief, in the Coda Pendant, a third color temperature is produced from mixing the light emitted by at least a portion of the first set of LED light sources and at least a portion of the second set of LED light sources. For example, this limitation is shown below:




93. The Coda Pendant includes at least one switch disposed on the luminaire, wherein the first set of LED light sources and second set of LED light sources are controlled by at least one switch. For example, this limitation is shown below:



94. In the Coda Pendant, when the at least one switch is in a first configuration (3000K), the light emitted by the luminaire is the third color temperature at a third lumen intensity, wherein the third lumen intensity is a combination of a first lumen intensity of at least a portion of the first set of LED light sources and a second lumen intensity of at least a portion of the second set of LED light sources. For example, this limitation is shown below:




95. In the Coda Pendant, the third color temperature is based, at least in part, on the first lumen intensity being more than the second lumen intensity. For example, when the switch is set to 3000K, the first set of light emitting diodes (2700K) are more intense than the second set of light emitting diodes (5000K):






96. The full extent of Artika's infringement is not presently known to Signify. On information and belief, Artika has made and sold, or will make and sell, products under different names or part numbers that infringe the '860 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment,

supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the ’860 Patent that is infringed and each product that Signify is aware of that infringes the ’860 Patent in accordance with the applicable scheduling order in this case.

97. On information and belief, Artika has been aware of and has had notice of the ’860 Patent and its infringement of the ’860 Patent since at least February 2, 2026, when Signify provided notice of Artika’s infringement of the ’860 Patent, among many other Signify patents.

98. On information and belief, by continuing to make, use, sell, offer to sell and/or import the ’860 Accused Products on or after Artika first had notice of Signify’s allegations of infringement, Artika indirectly infringed and continues to indirectly infringe at least claim 1 of the ’860 Patent by active inducement under 35 U.S.C. § 271(b). Artika has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the ’860 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Artika has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by Artika’s direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the ’860 Accused Products in the United States. Artika has performed and continues to perform these affirmative acts with knowledge of the ’860 Patent and with knowledge and intent that such actions would induce infringement of the ’860 Patent by Artika’s direct and indirect customers.

99. On information and belief, by continuing to make, use, sell, offer to sell and/or import the ’860 Accused Products on or after Artika first had notice of Signify’s allegations of

infringement, Artika indirectly infringed and continues to indirectly infringe at least claim 1 of the ’860 Patent by contributorily infringing under 35 U.S.C. § 271(c). Artika’s affirmative acts of manufacturing, selling, offering for sale, and/or importing the ’860 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to Artika’s customers and end-users directly infringing the ’860 Patent. The ’860 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Artika to be especially made or especially adapted for use in infringement of the ’860 Patent.

100. On information and belief, Artika has performed and continues to perform the above-identified acts of infringement with knowledge of the ’860 Patent and with intent, or willful blindness, that they cause the direct or indirect infringement of the ’860 Patent. Accordingly, Artika’s continued infringement of the ’860 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

101. On information and belief, Signify has suffered and continues to suffer damages as a result of Artika’s infringement of the ’860 Patent in an amount to be determined at trial, but no less than a reasonable royalty.

102. On information and belief, Artika’s infringement of the ’860 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless Artika is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the ’860 Patent.

103. On information and belief, and in light of the allegations above, including Artika's willful infringement of the '860 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

**COUNT THREE**
**(Infringement of U.S. Patent No. 11,002,424)**

104. Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

105. On information and belief, Artika has directly infringed and is directly infringing claims of the '424 Patent, including at least claim 16, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, the Alton Flush Mount mapped below, products substantially similar to the Alton Flush Mount, and/or other products with substantially similar features (collectively, the "'424 Accused Products").

106. Signify names this exemplary infringing instrumentality to serve as notice of Artika's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '424 Accused Products, including (but not limited to) products that it has previously identified to Artika as infringing products.

107. Claim 16 of the '424 Patent recites:

16. A luminaire comprising:

> a housing comprising an aperture;
>
> a first light source and a second light source that are mounted in the housing and that are oriented to emit light for illumination, wherein the first light source has a first color temperature and the second light source has a second color temperature; and

one or more switches that are coupled to an inner surface of the housing, the one or more switches operable to configure the luminaire in a first operating configuration, a second operating configuration, and a third operating configuration,

wherein in the first operating configuration, the luminaire is configured to emit light of the first color temperature,

wherein in the second operating configuration, the luminaire is configured to emit light of the second color temperature, and

wherein in the third operating configuration, the luminaire is configured to emit light of a third color temperature that is between the first color temperature and the second color temperature.

108. The Alton Flush Mount is a luminaire. For example, this limitation is shown below.



109. The Alton Flush Mount comprises a housing comprising an aperture. For example, this limitation is shown below:




110. The Alton Flush Mount comprises a first light source and a second light source that are mounted in the housing and that are oriented to emit light for illumination, wherein the first light source has a first color temperature and the second light source has a second color temperature. For example, as shown below, the first light source has a first color temperature (3000K) and the second light source has a second color temperature (5000K).






111. The Alton Flush Mount comprises one or more switches that are coupled to an inner surface of the housing, the one or more switches operable to configure the luminaire in a first operating configuration, a second operating configuration, and a third operating configuration. For example, this limitation is shown below:






112. In the Alton Flush Mount, when in the first operating configuration, the luminaire is configured to emit light of the first color temperature. For example, as shown below, when the switch is in the first configuration, the luminaire is configured to emit light of the first color temperature (3000K).






113. In the Alton Flush Mount, in the second operating configuration, the luminaire is configured to emit light of the second color temperature. For example, as shown below, when the switch is in the second configuration, the luminaire is configured to emit light of the second color temperature (5000K).






Second Color
Temperature

114. In the Alton Flush Mount, in the third operating configuration, the luminaire is configured to emit light of a third color temperature that is between the first color temperature and the second color temperature. For example, as shown below, when the switch is in the third

configuration, the luminaire is configured to emit light of a third color temperature (4000K) that is between the first color temperature (3000K) and the second color temperature (5000K).




115. The full extent of Artika's infringement is not presently known to Signify. On information and belief, Artika has made and sold, or will make and sell, products under different names or part numbers that infringe the '424 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '424 Patent that is infringed and each product that Signify is aware of that infringes the '424 Patent in accordance with the applicable scheduling order in this case.

116. On information and belief, Artika has been aware of and has had notice of the '424 Patent and its infringement of the '424 Patent since at least December 2, 2024, when Signify provided its infringement analysis of the '424 patent, among many other Signify patents.

117. On information and belief, by continuing to make, use, sell, offer to sell and/or import the '424 Accused Products on or after Artika first had notice of Signify's allegations of infringement, Artika indirectly infringed and continues to indirectly infringe at least claim 16 of

the ’424 Patent by active inducement under 35 U.S.C. § 271(b). Artika has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the ’424 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Artika has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by Artika’s direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the ’424 Accused Products in the United States. Artika has performed and continues to perform these affirmative acts with knowledge of the ’424 Patent and with knowledge and intent that such actions would induce infringement of the ’424 Patent by Artika’s direct and indirect customers.

118. On information and belief, by continuing to make, use, sell, offer to sell and/or import the ’424 Accused Products on or after Artika first had notice of Signify’s allegations of infringement, Artika indirectly infringed and continues to indirectly infringe at least claim 16 of the ’424 Patent by contributorily infringing under 35 U.S.C. § 271(c). Artika’s affirmative acts of manufacturing, selling, offering for sale, and/or importing the ’424 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to Artika’s customers and end-users directly infringing the ’424 Patent. The ’424 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Artika to be especially made or especially adapted for use in infringement of the ’424 Patent.

119. On information and belief, Artika has performed and continues to perform the above-identified acts of infringement with knowledge of the ’424 Patent and with intent, or willful blindness, that they cause the direct or indirect infringement of the ’424 Patent. Accordingly, Artika’s continued infringement of the ’424 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

120. On information and belief, Signify has suffered and continues to suffer damages as a result of Artika’s infringement of the ’424 Patent in an amount to be determined at trial, but no less than a reasonable royalty.

121. On information and belief, Artika’s infringement of the ’424 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless Artika is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the ’424 Patent.

122. On information and belief, and in light of the allegations above, including Artika’s willful infringement of the ’424 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys’ fees incurred in prosecuting this action.

**COUNT FOUR**
**(Infringement of U.S. Patent No. 7,737,643)**

123. Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

124. On information and belief, Artika has directly infringed and is directly infringing claims of the ’643 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, the Essence Flare mapped below, products substantially similar to the Essence Flare,

and/or other products with substantially similar features (collectively, the "'643 Accused Products").

125. Signify names this exemplary infringing instrumentality to serve as notice of Artika's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '643 Accused Products, including (but not limited to) products that it has previously identified to Artika as infringing products.

126. Claim 1 of the '643 Patent recites:

> 1. An apparatus comprising:
>
> at least one first white LED configured to generate first radiation having a first spectrum that includes perceivably white light; and
>
> a first feed-forward driver coupled to the at least one first white LED and configured to controllably vary a first intensity of the first radiation without monitoring or regulating a first voltage or a first current provided to the at least one first white LED,
>
> wherein the first feed-forward driver comprises an energy transfer arrangement including:
>
> at least one energy transfer element to store input energy derived from a power source and to provide output energy to the at least one first white LED;
>
> at least one switch coupled to the at least one energy transfer element to control at least the input energy stored to the at least one energy transfer element; and
>
> at least one diode,
>
> wherein the energy transfer arrangement is configured as one of a buck converter, a boost converter, a buck-boost converter, a CUK converter, a flyback converter and a forward converter.

127. To the extent the preamble is limiting, the Essence Flare is an apparatus:



128. The Essence Flare comprises at least one first white LED configured to generate first radiation having a first spectrum that includes perceivably white light. For example, the Essence Flare includes at least one white LED configured to generate perceivably white light at 3000K:






**Details**

| | | | |
|---|---|---|---|
| **Brightness (Lumens)** | 850 | **Bulb Type** | Integrated LED |
| **Colour Temperature** | Bright White (3000K) | **Fixture Colour/Finish.** | Chrome |
| **Lighting Features** | Dimmable | **Maximum Bulb Wattage (Watt)** | 18 |
| **Mount Location** | Ceiling Mounted | **Number of Lights** | 3 |
| **Power Source** | Hardwired | **Style** | Contemporary |
| **Track Head Type** | Step Head | **Track Length** | Less than 2 ft. |
| **Track Lighting Type** | Canopy | | |

https://www.homedepot.ca/product/artika-essence-flare-3l-integrated-led-track/1001010344.

129. The at least one white LED is configured to connect to the circuit shown below via the positive and negative terminals on the right side of the Artika circuit diagram below:




130. The Essence Flare comprises a first feed-forward driver coupled to the at least one first white LED and configured to controllably vary a first intensity of the first radiation without monitoring or regulating a first voltage or a first current provided to the at least one first white LED. For example, as shown below, a feed-forward driver is coupled to at least one first white LED (e.g., via the positive and negative terminals on the right side of the Artika circuit diagram).

The feed-forward driver is configured to variably control the intensity of the light of the at least one first white LED without monitoring or regulating the voltage or current provided to the at least one first white LED and without monitoring the light generated by the at least one first white LED at least because the feed-forward driver monitors only signals on the "primary" side of the circuit and is not configured to receive any feedback from the output to the at least one first white LED on the "secondary" side of the circuit.




**Details**

| | | | |
|---|---|---|---|
| **Brightness (Lumens)** | 850 | **Bulb Type** | Integrated LED |
| **Colour Temperature** | Bright White (3000K) | **Fixture Colour/Finish.** | Chrome |
| **Lighting Features** | Dimmable | **Maximum Bulb Wattage (Watt)** | 18 |
| **Mount Location** | Ceiling Mounted | **Number of Lights** | 3 |
| **Power Source** | Hardwired | **Style** | Contemporary |
| **Track Head Type** | Step Head | **Track Length** | Less than 2 ft. |
| **Track Lighting Type** | Canopy | | |

https://www.homedepot.ca/product/artika-essence-flare-3l-integrated-led-track/1001010344.

131. The first feed-forward driver of the Essence Flare comprises an energy transfer arrangement. For example, as shown below, the energy transfer arrangement comprises at least transformer T1, a transistor (within U1), and a diode D4.




132. The energy transfer arrangement in the Essence Flare includes at least one energy transfer element to store input energy derived from a power source and to provide output energy to the at least one first white LED. For example, as shown below, the energy transfer arrangement includes transformer T1 to store input energy from a power source (e.g., input power from the rectifier) and to provide output energy to the at least one white LED.



133. The energy transfer arrangement in the Essence Flare includes at least one switch coupled to the at least one energy transfer element to control at least the input energy stored to the at least one energy transfer element. For example, as shown below, the energy transfer arrangement includes a switch (e.g., a transistor within U1) coupled to the at least one energy transfer element (e.g., transformer T1) and when the transistor is on, current flows through the primary winding of transformer T1 and the transformer T1 stores energy.







iW3689 Functional Block Diagram

134. The energy transfer arrangement in the Essence Flare includes at least one diode. For example, as shown below, the energy transfer arrangement includes a diode D4 coupled to the at least one energy transfer element (e.g., transformer T1).




135. The energy transfer arrangement in the Essence Flare is configured as one of a buck converter, a boost converter, a buck-boost converter, a CUK converter, a flyback converter and a forward converter, as shown below (illustrating a flyback converter):




136. The full extent of Artika's infringement is not presently known to Signify. On information and belief, Artika has made and sold, or will make and sell, products under different names or part numbers that infringe the '643 Patent in a similar manner. Signify makes this

preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the ’643 Patent that is infringed and each product that Signify is aware of that infringes the ’643 Patent in accordance with the applicable scheduling order in this case.

137. On information and belief, Artika has been aware of and has had notice of the ’643 Patent and its infringement of the ’643 Patent since at least January 21, 2021, when Signify provided its infringement analysis of the ’643 Patent, among many other Signify patents.

138. On information and belief, by continuing to make, use, sell, offer to sell and/or import the ’643 Accused Products on or after Artika first had notice of Signify’s allegations of infringement, Artika indirectly infringed and continues to indirectly infringe at least claim 1 of the ’643 Patent by active inducement under 35 U.S.C. § 271(b). Artika has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the ’643 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Artika has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by Artika’s direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the ’643 Accused Products in the United States. Artika has performed and continues to perform these affirmative acts with knowledge of the ’643 Patent and with knowledge and intent that such actions would induce infringement of the ’643 Patent by Artika’s direct and indirect customers.

139. On information and belief, by continuing to make, use, sell, offer to sell and/or import the ’643 Accused Products on or after Artika first had notice of Signify’s allegations of infringement, Artika indirectly infringed and continues to indirectly infringe at least claim 1 of the ’643 Patent by contributorily infringing under 35 U.S.C. § 271(c). Artika’s affirmative acts of manufacturing, selling, offering for sale, and/or importing the ’643 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to Artika’s customers and end-users directly infringing the ’643 Patent. The ’643 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Artika to be especially made or especially adapted for use in infringement of the ’643 Patent.

140. On information and belief, Artika has performed and continues to perform the above-identified acts of infringement with knowledge of the ’643 Patent and with intent, or willful blindness, that they cause the direct or indirect infringement of the ’643 Patent. Accordingly, Artika’s continued infringement of the ’643 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

141. On information and belief, Signify has suffered and continues to suffer damages as a result of Artika’s infringement of the ’643 Patent in an amount to be determined at trial, but no less than a reasonable royalty.

142. On information and belief, Artika’s infringement of the ’643 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless Artika is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the ’643 Patent.

143. On information and belief, and in light of the allegations above, including Artika's willful infringement of the '643 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys' fees incurred in prosecuting this action.

**COUNT FIVE**
**(Infringement of U.S. Patent No. 8,629,631)**

144. Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

145. On information and belief, Artika has directly infringed and is directly infringing claims of the '631 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, the Essence Bar Pendant mapped below, products substantially similar to the Essence Bar Pendant, and/or other products with substantially similar features (collectively, the "'631 Accused Products").

146. Signify names this exemplary infringing instrumentality to serve as notice of Artika's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '631 Accused Products, including (but not limited to) products that it has previously identified to Artika as infringing products.

147. Claim 1 of the '631 Patent recites:

> 1. A switch mode power supply (SMPS) having improved start-up time at reduced input voltage, comprising:
>
> > a rectifier circuit for converting an alternating current (AC) power source to a direct current (DC) power source;
> >
> > a SMPS transformer having a primary winding thereof coupled to the DC power source and a controller supply winding for powering a SMPS controller;

a power transistor switch coupled to the primary winding of the SMPS transformer;

the SMPS controller having a drive output and a Vcc power supply input, wherein the drive output is coupled to the power transistor switch such that the SMPS controller controls when the power transistor switch turns on or off;

a Vcc power supply capacitor coupled to the Vcc power supply input of the SMPS controller;

a first rectifier diode coupled between the controller power winding of the SMPS transformer and the Vcc power supply capacitor; and

a start-up constant current source coupled between the DC power source and the Vcc power supply capacitor,

wherein the start-up constant current source provides a constant current charge to the Vcc power supply capacitor until a threshold voltage is reached thereon, then the start-up constant current source shuts off and charging voltage to the Vcc power supply capacitor is supplied by the controller power supply winding of the SMPS transformer through the first rectifier diode.

148. The Essence Bar Pendant includes a switch mode power supply (SMPS) having improved start-up time at reduced input voltage. For example, this limitation is shown below.



149. The Essence Bar Pendant includes a rectifier circuit for converting an alternating current (AC) power source to a direct current (DC) power source. For example, this limitation is shown below:




150. The Essence Bar Pendant includes a SMPS transformer having a primary winding thereof coupled to the DC power source and a controller supply winding for powering a SMPS controller. For example, the primary winding of transformer T1 is coupled to the rectifier (shown above) and the controller supply winding powers the controller (U1):




151. The Essence Bar Pendant includes a power transistor switch coupled to the primary winding of the SMPS transformer. For example, the Essence Bar Pendant includes the power transistor (Q2) coupled to the primary winding of the transformer (T1):



152. In the Essence Bar Pendant, the SMPS controller has a drive output and a Vcc power supply input, wherein the drive output is coupled to the power transistor switch such that the SMPS controller controls when the power transistor switch turns on or off. For example, the SMPS controller (U1) has a drive output and a Vcc power supply input, wherein the drive output is coupled to the power transistor switch (Q2) such that the SMPS controller (U1) controls when the power transistor switch (Q2) turns on or off:




153. The Essence Bar Pendant includes a Vcc power supply capacitor coupled to the Vcc power supply input of the SMPS controller. For example, the Essence Bar Pendant includes Vcc power supply capacitors (C8 and C10) coupled to the Vcc power supply input of the SMPS controller (U1):




154. The Essence Bar Pendant includes a first rectifier diode coupled between the controller power winding of the SMPS transformer and the Vcc power supply capacitor. For example, the Essence Bar Pendant includes a first rectifier diode (D2) coupled between the controller power winding of the SMPS transformer (T1) and the Vcc power supply capacitor(s) (C8 and C10):




155. The Essence Bar Pendant includes a start-up constant current source coupled between the DC power source and the Vcc power supply capacitor, wherein the start-up constant current source provides a constant current charge to the Vcc power supply capacitor until a threshold voltage is reached thereon, then the start-up constant current source shuts off and charging voltage to the Vcc power supply capacitor is supplied by the controller power supply winding of the SMPS transformer through the first rectifier diode. For example, the Essence Bar Pendant includes a start-up constant current source coupled between the DC power source (the output of rectifier DB1) and the Vcc power supply capacitors (C8 and C10), wherein the start-up constant current source provides a constant current charge to the Vcc power supply capacitors (C8 and C10) until a threshold voltage is reached thereon, then the start-up constant current source shuts off and charging voltage to the Vcc power supply capacitors (C8 and C10) is supplied by the controller power supply winding of the SMPS transformer (T1) through the first rectifier diode (D2):




156. The full extent of Artika's infringement is not presently known to Signify. On information and belief, Artika has made and sold, or will make and sell, products under different names or part numbers that infringe the '631 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '631 Patent that is infringed and each product that Signify is aware of that infringes the '631 Patent in accordance with the applicable scheduling order in this case.

157. On information and belief, Artika has been aware of and has had notice of the '631 Patent and its infringement of the '631 Patent since at least November 16, 2021, when Signify provided its infringement analysis of the '631 patent, among many other Signify patents.

158. On information and belief, by continuing to make, use, sell, offer to sell and/or import the '631 Accused Products on or after Artika first had notice of Signify's allegations of

infringement, Artika indirectly infringed and continues to indirectly infringe at least claim 1 of the ’631 Patent by active inducement under 35 U.S.C. § 271(b). Artika has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the ’631 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Artika has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by Artika’s direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the ’631 Accused Products in the United States. Artika has performed and continues to perform these affirmative acts with knowledge of the ’631 Patent and with knowledge and intent that such actions would induce infringement of the ’631 Patent by Artika’s direct and indirect customers.

159. On information and belief, by continuing to make, use, sell, offer to sell and/or import the ’631 Accused Products on or after Artika first had notice of Signify’s allegations of infringement, Artika indirectly infringed and continues to indirectly infringe at least claim 1 of the ’631 Patent by contributorily infringing under 35 U.S.C. § 271(c). Artika’s affirmative acts of manufacturing, selling, offering for sale, and/or importing the ’631 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to Artika’s customers and end-users directly infringing the ’631 Patent. The ’631 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Artika to be especially made or especially adapted for use in infringement of the ’631 Patent.

160. On information and belief, Artika has performed and continues to perform the above-identified acts of infringement with knowledge of the ’631 Patent and with intent, or willful blindness, that they cause the direct or indirect infringement of the ’631 Patent. Accordingly, Artika’s continued infringement of the ’631 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

161. On information and belief, Signify has suffered and continues to suffer damages as a result of Artika’s infringement of the ’631 Patent in an amount to be determined at trial, but no less than a reasonable royalty.

162. On information and belief, Artika’s infringement of the ’631 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless Artika is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the ’631 Patent.

163. On information and belief, and in light of the allegations above, including Artika’s willful infringement of the ’631 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys’ fees incurred in prosecuting this action.

## COUNT SIX
## (Infringement of U.S. Patent No. 8,596,837)

164. Signify incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

165. On information and belief, Artika has directly infringed and is directly infringing claims of the ’837 Patent, including at least claim 1, in violation of 35 U.S.C. § 271(a) by manufacturing, using, offering to sell, selling, and/or importing infringing products, including, but not limited to, Altitude Flush Mount mapped below, products substantially similar to the Altitude

Flush Mount, and/or other products with substantially similar features (collectively, the "'837 Accused Products").

166. Signify names this exemplary infringing instrumentality to serve as notice of Artika's infringing acts, but Signify reserves the right to name additional infringing products, known to or learned by Signify or revealed during discovery, and include them in the definition of the '837 Accused Products, including (but not limited to) products that it has previously identified to Artika as infringing products.

167. Claim 1 of the '837 Patent recites:

> 1. An apparatus for illumination comprising:
>
> a light emitting diode (LED) module comprising;
>
> an outer housing comprising a plurality of elongated slots extending along a front surface of the outer housing and disposed therethrough, each slot configured to receive a portion of a screw through the slot;
>
> a thermally conductive back side; and
>
> a substrate disposed within the outer housing and comprising one or more LEDs.

168. On information and belief, the Altitude Flush Mount is an apparatus for illumination. For example, this limitation is shown below.




169. The Altitude Flush Mount comprises a light emitting diode (LED) module. For example, this limitation is shown below.




170. The Altitude Flush Mount comprises an outer housing comprising a plurality of elongated slots extending along a front surface of the outer housing and disposed therethrough,

each slot configured to receive a portion of a screw through the slot. For example, this limitation is shown below:







171. The Altitude Flush Mount comprises a thermally conductive back side. For example, this limitation is shown below:




172. The Altitude Flush Mount comprises a substrate disposed within the outer housing and comprising one or more LEDs. For example, this limitation is shown below:




173. The full extent of Artika's infringement is not presently known to Signify. On information and belief, Artika has made and sold, or will make and sell, products under different names or part numbers that infringe the '837 Patent in a similar manner. Signify makes this preliminary identification of infringing products and infringed claims without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise. Signify will identify each claim of the '837 Patent that is infringed and

each product that Signify is aware of that infringes the ’837 Patent in accordance with the applicable scheduling order in this case.

174. On information and belief, Artika has been aware of and has had notice of the ’837 Patent and its infringement of the ’837 Patent since at least July 30, 2026. In the alternative, Artika has been aware of and has had notice of the ’837 Patent and its infringement of the ’837 Patent since at least the filing of this Complaint.

175. On information and belief, by continuing to make, use, sell, offer to sell and/or import the ’837 Accused Products on or after Artika first had notice of Signify’s allegations of infringement, Artika indirectly infringed and continues to indirectly infringe at least claim 1 of the ’837 Patent by active inducement under 35 U.S.C. § 271(b). Artika has done so by acts including but not limited to (1) selling such products including features that—when used or resold—infringe, either literally or under the doctrine of equivalents, the ’837 Patent; (2) marketing the infringing capabilities of such products; and (3) providing instructions, technical support, and other support and encouragement for the infringing use of such products. Artika has engaged in such conduct despite its knowledge that such conduct would and was intended to result in direct infringement by Artika’s direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the ’837 Accused Products in the United States. Artika has performed and continues to perform these affirmative acts with knowledge of the ’837 Patent and with knowledge and intent that such actions would induce infringement of the ’837 Patent by Artika’s direct and indirect customers.

176. On information and belief, by continuing to make, use, sell, offer to sell and/or import the ’837 Accused Products on or after Artika first had notice of Signify’s allegations of infringement, Artika indirectly infringed and continues to indirectly infringe at least claim 1 of the

’837 Patent by contributorily infringing under 35 U.S.C. § 271(c). Artika’s affirmative acts of manufacturing, selling, offering for sale, and/or importing the ’837 Accused Products and components thereof, including the components identified above, in this District and elsewhere in the United States, contribute to Artika’s customers and end-users directly infringing the ’837 Patent. The ’837 Accused Products and components thereof, including the components identified above, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Artika to be especially made or especially adapted for use in infringement of the ’837 Patent.

177. On information and belief, Artika has performed and continues to perform the above-identified acts of infringement with knowledge of the ’837 Patent and with intent, or willful blindness, that they cause the direct or indirect infringement of the ’837 Patent. Accordingly, Artika’s continued infringement of the ’837 Patent is willful and deliberate, entitling Signify to increased damages under 35 U.S.C. § 284.

178. On information and belief, Signify has suffered and continues to suffer damages as a result of Artika’s infringement of the ’837 Patent in an amount to be determined at trial, but no less than a reasonable royalty.

179. On information and belief, Artika’s infringement of the ’837 Patent is causing irreparable harm for which Signify has no adequate remedy at law unless Artika is enjoined by this Court. Under 35 U.S.C. § 283, Signify is entitled to a permanent injunction against further infringement of the ’837 Patent.

180. On information and belief, and in light of the allegations above, including Artika’s willful infringement of the ’837 Patent, this case is exceptional under 35 U.S.C. § 285, entitling Signify to costs and attorneys’ fees incurred in prosecuting this action.

## DEMAND FOR A JURY TRIAL

Signify hereby demands trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Signify prays for the following judgments and relief:

(a) A judgment that Artika has infringed and is infringing the Asserted Patents;

(b) A permanent injunction against Artika and its affiliates, subsidiaries, assignees, employees, agents or anyone acting in privity or concert from infringing the Asserted Patents, including enjoining the making, offering to sell, selling, using, or importing into the United States products claimed in any of the claims of the Asserted Patents; using or performing methods claimed in any of the claims of the Asserted Patents; inducing others to use and perform methods that infringe any claim of the Asserted Patents; or contributing to others using and performing methods that infringe any claim of the Patents-in-Suit, until the expiration of the Asserted Patents;

(c) A judgment that Artika's infringement of the Asserted Patents was willful and that Artika's continued infringement of the Asserted Patents is willful;

(d) An award of damages adequate to compensate Signify for Artika's patent infringement, and an accounting to adequately compensate Signify for the infringement, including, but not limited to, lost profits and/or a reasonable royalty;

(e) An award of pre-judgment and post-judgment interest at the maximum rate allowed by law;

(f) An award of damages for willful infringement;

(g) An order finding that this is an exceptional case and awarding Signify its costs, expenses, disbursements, and reasonable attorneys' fees related to Artika's patent infringement under 35 U.S.C. § 285 and all other applicable statutes, rules and common law; and

(h) Such other further relief, in law or equity, as this Court deems just and proper.

Dated: July 31, 2026

Respectfully submitted,

/s/ *Adam D. Swain*

Adam D. Swain (DC Bar No. 492063) (Lead Counsel)
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, D.C. 20004-1404
Phone: (202) 239-3622
Email: adam.swain@alston.com

Theodore Stevenson, III (TX Bar No. 19196650)
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas TX 75201
Phone: (214) 922-3400
Email: ted.stevenson@alston.com

Brady Cox (TX Bar No. 24074084)
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, Texas 75201
Phone: (214) 922-3443
Email: brady.cox@alston.com

Joshua Weeks (GA Bar No. 545063)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Phone: (404) 881-7405
Email: joshua.weeks@alston.com

***Attorneys for Plaintiffs Signify Holding B.V. and Signify North America Corporation***